UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

LAUREN SPENCER-SMITH,

                            Plaintiff,

            -v-

DAVID M. EHRLICH et al.,

                      Defendants.

------------------------------------------------------------------------X

23-cv-2652 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/03/2024

LEWIS J. LIMAN, United States District Judge:

    Plaintiff Lauren Spencer-Smith ("Plaintiff" or "Spencer-Smith") moves, pursuant to Federal Rule of Civil Procedure 15(a)(2), to file a Second Amendment Complaint ("SAC"). Dkt. No. 44. Defendants David M. Ehrlich ("Ehrlich"), David M. Ehrlich & Associates, P.C. ("DME Associates"), David M. Ehrlich P.C., Esq. ("DME P.C." and with DME Associates, the "DME Firms") and Song Collect, Inc. d/b/a DME Management ("DME Management" and collectively with Ehrlich, DME Associates, and DME PC, "Defendants") oppose the amendment. Dkt. No. 50. For the following reasons, the motion to amend is granted in part and denied in part.

**FACTUAL BACKGROUND**

    Familiarity with the prior proceedings in this action is assumed.

    Spencer-Smith, a dual citizen of Canada and the United Kingdom, is a musician and songwriter who resides in Canada. Dkt. No. 46-1 ¶ 3. She placed in the top 20 finalists on the television show *American Idol* in 2020 when she was 16 years old. *Id*. ¶ 16. She has since continued to produce music and released an album, "Unplugged Vol. 1," which was nominated for a Juno Award in the Best Adult Contemporary Album category. *Id*. ¶ 17–18.

Ehrlich is an attorney admitted to the New York State Bar.  *Id*. ¶ 5.  He is the sole owner and president of the DME Firms, New York corporations through which Ehrlich renders legal services to his clients.  *Id*. ¶¶ 5–11.  Additionally, Ehrlich is the sole owner and president of DME Management, also a New York corporation, through which Ehrlich manages the professional careers of entertainers.  *Id*.

Spencer-Smith and Ehrlich are parties to two agreements pursuant to which Ehrlich and/or his corporations render legal and management services to Spencer-Smith.  The first agreement is an engagement agreement (the "Engagement Agreement") dated April 17, 2020, and signed by Spencer-Smith, her parents, and Ehrlich.  The Engagement Agreement required the DME Firms to act as Spencer-Smith's attorneys in connection with her career in the entertainment industry, including terminating her relationship with her then-personal manager. *Id*. ¶¶ 21, 24, Ex. A.  The Engagement Agreement provided that the DME Firms "will be responsible for rendering all legal services that may be necessary or desirable that are related to [Spencer-Smith's] services and activities throughout the entertainment industry."  *Id.* Ex. A ¶ 1. In exchange for the DME Firms' services, the parties agreed that the DME Firms would receive a five percent commission on Spencer-Smith's earnings made in connection with her work in the entertainment industry.  *Id*. Ex. A ¶ 2.  The parties also agreed that the DME Firms would receive a ten percent "success fee" in the first year of the Engagement Agreement and five percent thereafter if the DME Firms were directly responsible for obtaining, among other things, a recording agreement with a major record label.  *Id*.

The second agreement is a management agreement (the "Management Agreement"), executed by Spencer-Smith, her parents, and Ehrlich, which provided that DME Management would manage Spencer-Smith's entertainment career.  *Id.* ¶¶ 41–42, Ex. B.  The Management

Agreement was signed after Spencer-Smith separated from her then-personal manager in November 2020, *id.* ¶ 31, and after Ehrlich sought to become Spencer-Smith's personal manager through DME Management, *id.* ¶ 32. The Management Agreement contained a conflict-of-interest waiver, which purports to waive Ehrlich's conflict of interest in acting as both Spencer-Smith's attorney and her personal manager. *Id.* Ex. B ¶ 13(j). Spencer-Smith's parents agreed to the terms on behalf of themselves and Spencer-Smith and agreed to be liable for any financial obligations incurred by Spencer-Smith prior to her eighteenth birthday. *Id.* at 14–15. On or about September 30, 2021, Spencer-Smith ratified the Management Agreement, two days after she turned eighteen. *Id.* at 14.

On January 5, 2022, Spencer-Smith self-released a single entitled "Fingers Crossed," which went viral on the video-sharing application TikTok. Dkt. No. 46-1 ¶ 53. A few weeks later, Spencer-Smith entered into an exclusive recording agreement with Island Records and Republic Records, divisions of UMG Recordings, Inc. ("UMG"). *Id.* ¶ 59.

In April 2022, UMG sent Spencer-Smith on a three-week promotional tour in Europe ("the Tour"). *Id.* ¶ 68. Ehrlich accompanied Spencer-Smith on the Tour. *Id.* ¶ 69. While on the Tour, Ehrlich allegedly took pictures of women without their consent, solicited a female UMG employee to work for him in New York, commented inappropriately about multiple women, berated a UMG employee, and caused one UMG employee to depart the Tour because she could not be in the presence of Ehrlich any longer. *Id.* ¶¶ 70–76. After UMG received complaints from its employees about Ehrlich, UMG allegedly conducted an internal investigation into Ehrlich's purported misconduct. *Id.* ¶ 77. UMG then allegedly advised Ehrlich to leave the Tour, and threatened to cancel the Tour if he refused to leave. *Id.* ¶ 78. Ehrlich allegedly did not

advise Spencer-Smith about the existence or results of the UMG investigation, left for the United

States, and sent his assistant to replace him on the Tour.  *Id*. ¶¶ 80–82.

On May 13, 2022, Spencer-Smith purported to terminate the Management Agreement.

*Id*. ¶ 98, Ex. C.  On June 1, 2022, Ehrlich and DME Management rejected Spencer-Smith's

notice of termination, claiming that the Management Agreement was still effective, and that

Spencer-Smith was in breach of the Management Agreement.  *Id.* ¶ 99, Ex. D.  Ehrlich and DME

Management purported to invoke the provision of the Management Agreement that gave them

the power to extend the term of the Management Agreement indefinitely until Plaintiff cured her

breaches.  *Id*.  On June 7, 2022, Spencer-Smith rejected Ehrlich and DME Management's claim

of breach and asserted that the relationship between herself and Ehrlich and DME Management

had been irretrievably damaged by Ehrlich's conduct.  *Id.* ¶ 100, Ex. E.  Spencer-Smith also

purported to terminate her attorney-client relationship with Ehrlich and the DME Firms.  Dkt.

No. 14 ¶ 101.

## PROCEDURAL HISTORY

On March 30, 2023, Spencer-Smith initiated this action against Defendants asserting two

claims for breach of fiduciary duty, one against Ehrlich and the DME Firms acting in their

capacity as Plaintiff's counsel and one separately against Ehrlich and DME Management acting

in their capacity as Plaintiff's managers; breach of contract against DME Management; and a

claim for faithless servant against all Defendants.  *See* Dkt. No. 1.  Plaintiff also sought

declaratory relief in the form of a judgment that the Management Agreement was void or subject

to rescission, that the Management Agreement was unconscionable, and that the Engagement

Agreement was void or subject to rescission.  *Id.*

On May 18, 2023, the Court consolidated this action with a separate action that had been

filed in this District by some of the Defendants against Plaintiff.  *See* Dkt. No. 8.  In that action,

Ehrlich, DME Management, and DME Associates assert claims for breach of the Management

Agreement, breach of the Engagement Agreement, and defamation *per se*. *Ehrlich v. Spencer-*

*Smith*, 23-cv-2653, Dkt. No. 1.  They also seek a declaratory judgment that the Management and

Engagement Agreements are valid, binding, and enforceable contracts.  *Id.*

On June 23, 2023, Plaintiff filed her Amended Complaint.  Dkt. No. 14.  On June 26,

2023, Defendants filed their First Amended Complaint.  Dkt. No. 16.  The Amended Complaint

alleged claims for breach of fiduciary duty in connection with the provision of legal services

(First Claim), breach of fiduciary duty in connection with the provision of management services

(Second Claim), breach of the Management Agreement (Third Claim), declaratory judgment that

the Management Agreement is void or subject to rescission (Fourth Claim), unconscionability

(Fifth Claim), declaratory judgment that the Engagement Agreement is void or subject to

rescission (Sixth Claim), and faithless servant (Seventh Claim).  Dkt. No. 14 ¶¶ 142–186.

On February 21, 2024, this Court issued an Opinion and Order granting in part and

denying in part Defendants' motion to dismiss the Amended Complaint.  Dkt. No. 39.  The Court

denied Defendants' motion to dismiss Plaintiff's First, Second, and Seventh Claims for relief.

The Court granted Defendant's motion to dismiss Plaintiff's Fourth, Fifth and Sixth Claims for

relief with prejudice.  The Court dismissed Plaintiff's Third Claim for relief (for breach of the

Management Agreement) without prejudice because Plaintiff did not identify the specific

provisions of the Management Agreement that she alleged Defendants breached.  Dkt. No. 39 at

27–28.

Plaintiff filed this motion for leave to file a SAC, along with an accompanying

memorandum of law and declaration, on March 15, 2024.  Dkt. Nos. 44–46.  The proposed SAC

removes the claims the Court previously dismissed with prejudice, i.e., the claims that the

Management Agreement and Engagement Agreement are void or subject to rescission and that

the Management Agreement is unconscionable.  The SAC repleads Plaintiff's Third Claim for

breach of the Management Agreement to allege that DME Management breached its obligations

under paragraphs 1 and 7 of the Management Agreement.  Dkt. No. 46-1 ¶ 117.  The SAC

contains a new Fourth Claim for breach of the implied covenant of good faith and fair dealing

against DME Management, alleging that DME Management frustrated the purpose of the

Management Agreement that DME Management and Ehrlich "promote and enhance" Plaintiff's

career in the entertainment industry by engaging in conduct that inured to Plaintiff's detriment in

that industry.  *Id.* ¶ 123.  It also contains a new Fifth Claim alleging breach of the Engagement

Agreement by the DME Firms, *id.* ¶ 127, and a new Sixth Claim for a declaratory judgment

against DME Management that the Management Agreement was properly terminated on or about

May 13, 2022, *id.* ¶ 133.

On April 19, 2024, Defendants filed a memorandum of law and a declaration in

opposition to the motion to amend.  Dkt. Nos. 49–50.  On April 26, 2024, Plaintiff filed a reply

memorandum of law in further support of her motion.  Dkt. No. 51.  The Court held oral

argument on the motion on June 3, 2024.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) directs courts to "freely give leave" to amend a

complaint "when justice so requires."  Fed. R. Civ. P. 15(a); *see Blanco v. Success Academy

Charter Schs., Inc.*, --- F. Supp. 3d ----, 2024 WL 965001, at *22 (S.D.N.Y. Mar. 6, 2024).

However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or

---

[1] The Court mistakenly signed an order granting the motion on April 18, 2024.  Dkt. No. 47.
That order was vacated the same day.  Dkt. No. 48.

undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007)).

An amendment is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Commc'ns, Inc*., 681 F.3d 114, 119 (2d Cir. 2012). The court considers the proposed amendment along with the remainder of the complaint and applies the *Twombly*/*Iqbal* standard "to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678–80 (2009)). The complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

The SAC proposes amendments to Plaintiff's Third Claim (breach of the Management Agreement) by alleging that three specific provisions of the Management Agreement were breached. The SAC also proposes adding new claims for breach of the implied covenant of good

faith and fair dealing in the Management Agreement, breach of the Engagement Agreement, and for a declaratory judgment that the Management Agreement was properly terminated on or around May 13, 2022.  The Court discusses each of these proposed amendments in turn.

## I.      Plaintiff's Motion to Amend the Third Claim for Relief

The Court previously dismissed Plaintiff's third claim for relief for breach of the Management Agreement because Plaintiff failed to allege the specific provisions of the Management Agreement that she claimed DME Management breached.  In the proposed SAC, Plaintiff alleges that she performed all her obligations under the Management Agreement and that DME Management materially breached its obligations under paragraphs 1 and 7 of the Management Agreement.  Dkt. No. 46-1 ¶¶ 116–17.

Paragraph 1 of the Management Agreement provides in pertinent part:

[DME Management] shall use [its] reasonable efforts to promote and enhance your career in the entertainment industry and in the use and exploitation of Entertainment Services which you are now capable of providing and those for which your talents and skills are developed following the date hereof.  [DME Management] shall be available at reasonable times and reasonable places to confer with and give you guidance in connection with your Entertainment Services including but not limited to, recording music, music publishing, marketing, promotion, merchandising, publicity, imaging, live performances, choice of booking agents, and general matters concerning your professional career, business interests, employment and publicity, and will engage, discharge and/or direct such theatrical agents, booking agencies, and employment agencies as well as other firms, persons or corporations who may be retained by you for the purpose of securing contracts, engagements or employment for you.

Dkt. No. 46-1 Ex. B ¶ 1.

Paragraph 7(b) of the Management Agreement contains the warranty and representation of DME Management that:

(b) No act or omission by Manager will violate the rights of any person, firm or corporation or other entity nor will submit Artist to any liability or claims.

*Id.* Ex. B ¶ 7(b).

Specifically, Plaintiff alleges that DME Management, through Ehrlich, "engaged in significant unprofessional and career-damaging behavior in breach of their contractual . . . duties to guide, assist, and promote Ms. Spencer-Smith . . . in connection with her professional career." Dkt. No. 46-1 ¶ 62.  Plaintiff alleges that Ehrlich "insulated and isolated" her, including from her business managers, music producers, band, and members of her record label, and "exert[ed] unwarranted control over her dealings and communications" with these individuals.  *Id.* ¶¶ 63–65.  Additionally, the SAC alleges that Ehrlich's behavior while he accompanied Plaintiff on the Tour was detrimental to her career.  *Id.* ¶¶ 70–83, 87.

Defendants argue that Plaintiff's proposed revisions to the Third Claim would be futile because (i) Plaintiff failed to provide Defendants notice of the alleged breach and an opportunity to cure it as required in paragraph 13(b) of the Management Agreement (the "Cure Provision"), and (ii) Plaintiff fails to plausibly allege that any actual breach of the Agreement.  Dkt. No. 50 at 8.

### A.    Cure Provision

Defendants argue that Plaintiff cannot properly allege breach of contract because she did not comply with her own material obligations under the contract.  Dkt. No. 50 at 9.  Specifically, Defendants argue that Plaintiff failed to provide Defendants notice and an opportunity to cure the alleged breach.  *Id.* at 9–11.  Defendants argue that Spencer-Smith's compliance with the Cure Provision was a prerequisite in order to bring a breach of contract claim under the Management Agreement.  *Id.*  Defendants' argument is without merit.

To plead a claim for breach of contract under New York law, a plaintiff need allege only: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v.*

*Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 65 (S.D.N.Y. 2021); *RCN Telecom Services, Inc. v. 202 Centre Street Reality LLC*, 156 Fed. App'x 349, 350–51 (2d Cir. 2005) (summary order); *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022); *Harris v. Seward Park Housing Corp.*, 913 N.Y.S.2d 161, 162 (1st Dep't 2010).  Plaintiff has alleged adequate performance under the Management Agreement.  In particular, she has generally alleged that she performed all her obligations under the Management Agreement.  Dkt. No. 46-1 ¶ 116.

Defendants' argument turns upon the claim that Plaintiff's allegation is vague and conclusory and that Plaintiff was obligated to plead satisfaction of the condition precedent.  Dkt. No. 50 at 9–11.  As to the first argument, there is caselaw that a breach of contract complaint is subject to dismissal when the plaintiff makes only "vague and conclusory" assertions that it has satisfied its contractual obligations.  *See* Dkt. No. 50 at 9 (citing *Boustead Sec.., LLC v. Leaping Grp. Co.*, 2021 WL 3774116, at *3 (S.D.N.Y. Aug. 25, 2021), and *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012)).  But *Boustead* and *Swan Media* are distinguishable.  In *Boustead*, plaintiff was party to two separate agreements—one with the defendant and one with another entity.  *Id.* at *2.  Plaintiff alleged that it satisfied its obligations under both agreements, but did not even attempt to differentiate its performance under the first agreement from its performance under the second agreement.  *Id.* at *3.  In those circumstances, where the plaintiff failed to make *any* positive allegation of performance under the contract it claimed was breached, the court concluded that the allegations were "vague and conclusory."  *Id.* In *Swan Media*, the court dismissed plaintiff's breach of contract claim because she failed to identify the clause of the agreement that she alleged defendant had breached and through what actions, and because the contract was arguably "void for vagueness."  841 F. Supp. 2d at 807–

808.  The *Swan Media* court stated that plaintiff failed to allege her adequate performance under the agreement only after concluding plaintiff failed to allege any breach by defendant and only because other contract language called into question "whether Plaintiff could plead its adequate performance as a matter of law."  *Id.* at 808.

Other cases state that a plaintiff may allege their own performance under a contract generally.  *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 360 (S.D.N.Y. 2012) (allegations that plaintiff generally performed in accordance with contract were sufficient); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 648–49 (E.D.N.Y. 2012) (it is sufficient to allege that the claimant has performed all its proper and legitimate duties and obligations under its contract, citing Moore's Federal Practice § 9.04 (2011)); *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 290–91 (S.D.N.Y. 1995); *Mutuelle Generale Francaise Vie v. Life Assurance Co.*, 688 F. Supp. 386, 399–400 (N. D. Ill. 1988); *cf. Gebbs Healthcare Sols., Inc. v. Orion Healthcorp, Inc.*, 2017 WL 1251143, at *5 (S.D.N.Y. 2017) (noting that relatively simple allegations will suffice to plead a breach of contract claim); *In re InSITE Servs. Corp., LLC*, 287 B.R. 79, 92 (B.R. S.D.N.Y. 2002) (noting that "[c]ourts rarely dismiss on the ground that the plaintiff has not included "talismanic words" in its complaint when alleging its own adequate performance).  That line of authority has persuasive force.  The function of the complaint under Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); the complaint must allege sufficient facts "to raise a right to relief above the speculative level," *id.*  Where the plaintiff has alleged the existence of an agreement, identified the obligations of the defendant, plead facts to establish non-performance, and pleaded her own performance generally, the plaintiff has satisfied Rule 8.  The plaintiff need

not identify all of her obligations under the agreement and allege that she has satisfied each of them.  The defendant, who is the counterparty to the agreement, is in a position to know those obligations and to defend on the grounds that the plaintiff has not satisfied them.

Defendants' more forceful argument is that Plaintiff was required to plead at least generally that she satisfied the Cure Provision of the Management Agreement, which the Management Agreement characterizes as a "condition precedent to any assertion by either party that the other is in default or in breach of an obligation."  Dkt. No. 50 at 9–11; Dkt. 46-1 Ex. B ¶ 13(b).  That argument turns upon case law that holds that if a contract contains a condition precedent then the plaintiff must plead satisfaction of the condition precedent.  *See, e.g.*, *Rojas v. Don King Prods., Inc.*, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012).  Plaintiff has not specifically alleged satisfaction of the condition precedent.  Accordingly, Defendants argue that the proposed Third Claim fails to state a claim for relief.  The Court is not convinced.

The caselaw cited by Defendants ultimately rests upon Federal Rule of Civil Procedure 9(c).  *See Rojas*, 2012 WL 760336, at *2 (citing *Baraliu v. Vinya Cap., L.P.*, 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009) and *CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006), which rely upon Federal Rule of Civil Procedure 9(b)).  Federal Rule of Civil Procedure 9(c) provides that:

> In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.  But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

Fed. R. Civ. P. 9(c).

There is caselaw that has held that a plaintiff is required to plead that it has satisfied all conditions precedent to bring a claim for breach of contract.  *See, e.g.*, *Patel v. Baluchi's Indian Rest.*, 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (Sullivan, J.) (dismissing without prejudice breach of contract claim for failure to generally allege compliance with condition

precedent that was required to be satisfied before defendant's duty to perform arose); *Park v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 6318278, at *6 (E.D.N.Y. Sept. 5, 2023) (denying motion to amend a complaint as futile where plaintiff had not alleged compliance with a contractual condition precedent to obtaining coverage under an insurance policy), *report and recommendation adopted*, 2023 WL 6308086 (E.D.N.Y. Sept. 27, 2023); *Rojas*, 2012 WL 760336, at *1 (finding notice and cure provision to be a condition precedent and dismissing breach of contract claim without prejudice where compliance with such a provision was not generally alleged).[2]  The decisions, however, are mixed on the requirements of Federal Rule of Civil Procedure 9(c).  Other courts have held that a plaintiff need not plead satisfaction of a condition precedent.  *See Mendez*, 840 F. Supp. 2d at 648–49 (holding that plaintiff need not plead satisfaction of conditions precedent); *see also Superior Site Work, Inc. v. Nasdi, LLC*, 2016 WL 526238, at *6 (E.D.N.Y. Feb. 9, 2016) (holding that general averment that conditions precedent have been satisfied is sufficient); *Cohen v. LTF Real Estate Co., Inc.*, 2009 WL 1373542 (E.D.N.Y. 2009) (holding that plaintiff's general claim that he fully performed all covenants and conditions precedent under the relevant agreement was sufficient to survive a motion to dismiss).

The Court is convinced that the better view is that the plaintiff must plead the satisfaction of a condition only when that condition is precedent to the contractual obligation the defendant is

---

[2] Although not dispositive to this Court's ruling, the contractual notice-and-cure provision in *Rojas* was different than the one in the Management Agreement at issue here.  In *Rojas*, the contractual notice-and-cure provision specifically "precluded" the plaintiff from "commencing an action" against the defendant based upon an alleged breach before the expiry of the cure period and stated that if plaintiff failed for any reason to provide the notice then plaintiff "shall be deemed to have waived and released and hereby does waive and release [defendant] from any and all liability with respect to such claimed breach."  2012 WL 760336, at *1.

alleged to have breached.  The plaintiff need not plead satisfaction of a contractual condition to the filing of a lawsuit.

The Court starts with the language of the Federal Rules of Civil Procedure and first principles.  *See Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540–41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning.").  As a general matter, Rule 9 does not dictate what must be pleaded in a complaint to state a cause of action. Rule 8 does so.  *See* 2 Moore's Federal Practice – Civil § 8.02 (2024) ("Rule 8 establishes the basic requirements for pleadings in all federal civil actions."); *Iqbal*, 556 U.S. at 584 (Rule 8 governs the pleading standard "in all civil actions and proceedings in the United States district courts"); *Srsne Site Grp. v. Advance Coatings Co.*, 2015 WL 13639165, at *2 (D. Conn. Mar. 27, 2015) ("Rule 8(a) of the Federal Rules of Civil Procedure governs whether the allegations in the pleadings stat a valid cause of action.").  Rule 9 specifies how specific matters are to be pled.

Thus, for example, while Rule 9(b) requires that in pleading scienter, a party must allege the facts supporting the inference of fraudulent intent with scienter, Rule 9(b) does not itself require a party to plead scienter.  *Cf. Heinrich v. Goodyear Tire & Rubber Co.*, 532 F. Supp. 1348, 1358 (D. Md. 1982) (explaining that "[i]n a diversity case, the elements of fraud that must be alleged in the complaint in order to state a cognizable claim are determined by reference to state law" while "[t]he degree of specificity required with respect to those elements, however, is a matter of federal procedure" (citing 2A Moore's Federal Practice § 9.03 at 9-18 (2d ed. 1981) and 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (1969))).  In a diversity case, the requirement to plead scienter comes from state law; if the state law does not require scienter to be pleaded as an element, scienter need not be pleaded with particularity in the complaint.  *See In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428–429 (Bankr.

S.D.N.Y. 1998) (Rule 9(b) does not apply where scienter is not an element of substantive claim); *see also Pelman ex. rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (New York General Business Law § 349 does not require proof of the same essential elements as common law fraud and therefore is not subject to Rule 9(b)'s heightened pleading standard); *Leonard v. Abbott Laboratories*, 2012 WL 764199, at *20 (E.D.N.Y. Mar. 5, 2012) (looking to elements of Texas and New Hampshire consumer protection statutes in order to decide whether Rule 9(b) applied to claims under those statutes).

Rule 9(c) is no different.  The plain language of Rule 9(c) itself appears to be agnostic as to whether the plaintiff has an affirmative burden to plead satisfaction of a condition precedent. It tells the pleader how to plead satisfaction of a condition precedent, not whether to plead satisfaction of the condition precedent.  It refers to the pleading requirements for each of the plaintiff or the defendant should plaintiff or defendant be required to plead satisfaction of a condition precedent.  Rule 9(c) does not require "that the performance or occurrence of conditions precedent be pleaded by a claimant," but "simply describes how performance or occurrence of conditions precedent is to be pleaded."  2 Moore's Federal Practice § 9.04[1] (2024); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1235 (4th ed. 2024) ("The complaint in a contract action must contain a short and plain statement of the claim as is required by Federal Rules of Civil Procedure 8(a) and 8(d) . . . .  If the applicable law makes the performance or occurrence of conditions precedent an element of the contract claim, then such an allegation must be included in the complaint.").

The question whether the plaintiff or defendant, or neither, must plead satisfaction of a condition precedent, much like the question whether the plaintiff must plead intent under Federal Rule of Civil Procedure 9(b), is determined by the elements of state law.  "[T]o determine what

the plaintiff must plausibly allege at the outset of a lawsuit, [the court] usually ask[s] what the plaintiff must prove in the trial at its end." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293, 303 (2d Cir. 2021) (quoting *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020)).  The Court follows New York state law with respect to the elements of a claim of fraud or a claim of breach of contract.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 360 (1965).

In many instances, a plaintiff will be required affirmatively to plead satisfaction of a condition precedent as a general matter.  A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  *See Patel*, 2009 WL 2358620, at *7 (quoting *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)).  It thus follows that in a run-of-the-mill breach of contract case, where the plaintiff must have satisfied a condition precedent before any duty of the defendant to perform arises, the plaintiff must plead satisfaction of the condition precedent because otherwise the plaintiff will have failed to allege any breach by defendant, which is an element of the claim under New York law.  *See POSCO Energy Co. v. FuelCell Energy Inc.*, 560 F. Supp. 3d 747, 753–54 (S.D.N.Y. 2021) (dismissing claim for breach of covenant where contract required plaintiff to deliver actual legended certificates representing their shares before defendant was obligated to (or even could) remove restrictive legends and plaintiff did not allege they had done so and therefore defendant's duty was never triggered); *Park*, 2023 WL 6318278, at *6 (breach of contract claim against insurance company for failure to reimburse was barred where insurance company was only obligated to reimburse up to one year after accident for claims submitted within 90 days of the relevant service but plaintiff did not request reimbursement until more than one year after the accident); *Patel*, 2009 WL

2358620, at *7–8 (complaint for breach of an employment contract dismissed where contract only obligated defendant to employ plaintiff if plaintiff was granted lawful permanent resident status and plaintiff did not allege that he was ever granted such status); *Baraliu*, 2009 WL 959578, at *5 (complaint claiming that defendant breached a contract by not paying plaintiff $1,000,000 failed where contract only required defendant to pay if certain requirements were met and plaintiff failed to allege those requirements had been met); *CVC Claims*, 2006 WL 1379596, at *4 (complaint claiming that defendant breached a contract by not committing $16,000,000 in financing failed where defendant's obligation to provide that financing was subject to five conditions, including its receipt of other funds and approval of a tender offer, and plaintiff failed to allege those conditions had been met).[3]  In these types of cases, if the condition precedent has not been satisfied, the defendant would have had no obligation to perform and thus the failure to perform cannot constitute a breach.  *See Preferred Mortg. Brokers, Inc. v. Byfield*, 723 N.Y.S.2d 230, 231 (2d Dep't 2001) (defendant could not be in breach of contract for failing to pay plaintiff where defendant was only obligated to pay plaintiff upon signing a document that defendant never signed); *MHR Cap. Partners LP v. Presstek, Inc.*, 884 N.Y.S.2d 211, 213 (2009) (breach of contract claim failed where defendant's obligation never arose due to failure to satisfy condition precedent).

The complication in this case is that Section 13(b), though labelled a condition precedent, is not a condition to the performance of any duty that forms the basis of Plaintiff's claim.  Each

---

[3] In contrast, compliance with a notice-and-cure provisions that are a condition to suit is frequently raised at the summary judgment stage.  *See, e.g., Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297 (2d Cir. 2016); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684 (S.D.N.Y. 2017); *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175 (S.D.N.Y. 2011); *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678 (S.D.N.Y. 2011).  Indeed, all of the notice-and-cure cases cited by the *Rojas* court were in a summary judgment or other post-fact-finding procedural posture.  *See Rojas*, 2012 WL 760336, at *2.

of the covenants that Defendants are alleged to have violated was unconditional.  The duty to

perform them arose when Defendants and Plaintiff signed the Management Agreement.  Under

the Management Agreement, DME Management promised to use "reasonable efforts to promote

and enhance [Spencer-Smith's] career in the entertainment industry."  Dkt. 46-1 Ex. B ¶ 1.  DME

Management also agreed that "Manager shall be available at reasonable times and reasonable

places to confer with and give [Spencer-Smith] guidance."  *Id*.  DME Management also

"warrant[ed]" and "represent[ed]" that "[n]o act or omission by [DME Management] will violate

the rights of any person, firm or corporation or other entity nor will subject Artist to any liability

or claims."  *Id*. ¶ 7.  There is no conditional language surrounding any of these duties suggesting

that they would arise only upon satisfaction of some obligation by Spencer-Smith that she then

failed to allege she had satisfied in her complaint.

  The condition set forth in Paragraph 13(b) is different.  It is not a condition precedent to

performance.  It is a condition precedent to suit.  It provides:

> As a condition precedent to any assertion by either party that the other is in default
> or in breach of an obligation hereunder, the claiming party must advise the other in
> writing of the specific facts upon which the claim is based and of the specific nature
> of the breach or default and the other party shall have a period of thirty (30) days
> after receipt of such notice to cure such alleged breach or default (or to commence
> curing same if not capable of immediate cure, and actually cure same within a
> reasonable time thereafter).   During that period no breach shall be deemed
> incurable.

Dkt. No. 46-1 Ex. B. ¶ 13(b).

  The condition is stated to be "precedent to any *assertion* by either party that the other is

in default or in breach of an obligation hereunder," not to whether the other party had an

obligation to perform in the first place the failure of which to discharge could give rise to a

breach.  *Id.* (emphasis added).  It thus resembles in form a condition subsequent.  It was not a

condition whose existence was "necessary for the obligation to come into being."  *Mereminsky v.*

*Mereminsky*, 188 N.Y.S. 2d 771, 777 (2d Dep't App. Term 1959).  The obligation subsisted in the Management Agreement itself.  It was a condition, the failure to satisfy would defeat an existing obligation.  *Id.*; *see Muench Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 367 F. Supp. 3d 82, 88–89 (S.D.N.Y. 2019) (explaining a "contract obligation[] that [is] to be performed after partial performance by the other party" is "not treated as [a] condition[]").

The failure of the performing party to satisfy a notice-and-cure provision such as that contained in Paragraph 13(b) thus is an affirmative defense that must be pleaded and proved by the party in breach.  *See, e.g.*, *Wengryn v. Provisions Consultants Corp.*, 667 Fed. App'x 10, 11 (2d Cir. 2016) (summary order) (discussing notice-and-cure provision raised as affirmative defense); *IMG Fragrance Brands, LLC v. Houbigant*, 679 F. Supp. 2d 395, 402–403 (S.D.N.Y. 2009) (notice and cure provision was affirmative defense that plaintiff was not required to plead around).  It is incumbent on the defendant to assert the failure to comply with the notice-and-cure provision and not on the plaintiff to anticipate the defense and plead its satisfaction.  *See Clark v. Hanley*, 89 F. 4th 78, 93–94 (2d Cir. 2023) (Federal Rules of Civil Procedure do not compel a plaintiff to plead an affirmative defense); *Montoya v. Havana Central 2 LLC*, 2024 WL 874640, at *4 (S.D.N.Y. 2024) (generally a defendant must plead and prove an affirmative defense).  The plaintiff need not prove satisfaction of the cure provision to establish her contract claim; the failure of the defendant to raise it will constitute a waiver.  *See, e.g.*, *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (finding notice-and-cure provision waived).[4]

---

[4] In that respect, the Cure Provision resembles an administrative exhaustion requirement. Though a prerequisite to maintaining a lawsuit, it need not be affirmatively pled by the plaintiff in the first instance.  *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 485, 490 (2d Cir. 2018); *Williams v. Correction Officer Priatno*, 829 F. 3d 118, 122 (2d Cir. 2016) (noting that failure to exhaust an administrative remedy was an

Plaintiff here has generally alleged that she performed all her obligations under the Management Agreement.  Dkt. No. 46-1, ¶ 116.  That is sufficient at this stage.

**B.      Breach**

**1.      Promotion Clause**

Plaintiff first claims that DME Management materially breached its obligation under paragraph 1 of the Management Agreement to use "reasonable efforts to promote and enhance [Spencer-Smith's] career in the entertainment industry" (the "Promotion Clause").  Plaintiff argues that Ehrlich's behavior was "unprofessional and career damaging."  Dkt. No. 46-1 ¶ 62. Plaintiff alleges that Ehrlich isolated Spencer-Smith from certain of her other business contacts, such as individuals at her record label (UMG), her band, music producers, business manager, and writers.  *Id.* ¶¶ 63–65.  Plaintiff also alleges that Ehrlich engaged in a variety of unprofessional and inappropriate behavior during the Tour on which he accompanied her and that at least some of this behavior caused one UMG employee who was accompanying Spencer-Smith to leave the Tour and prompted UMG to investigate Ehrlich and require him to leave the Tour.  *Id.* ¶¶ 70–78. Plaintiff alleges that, in total, Ehrlich's behavior was detrimental to her career, jeopardized her Tour, caused her professional embarrassment and damaged her reputation as a role model to other young women.  *Id.* ¶¶ 79, 92–94.

Defendants argue that Spencer-Smith misinterprets paragraph 1, which places only a *positive* obligation on DME Management to use reasonable efforts to promote and enhance Spencer-Smith's career.  Defendants contrast this with a morals clause or some other contractual obligation that would "police[]" Ehrlich's conduct.  Dkt. No. 50 at 11-12.  The Court rejects

affirmative defense, not a pleading requirement).

Defendants' argument.  Plaintiff has alleged sufficient facts to give rise to a plausible claim and to entitle her to discovery.

There is not a settled meaning of "reasonable efforts" clauses in New York.  *See Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 469 (S.D.N.Y. 2018).  But as a general matter, whether a party to a contract has used its reasonable efforts is typically a question of fact. *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 2012 WL 4891584 at *5 (W.D.N.Y. 2012); *Guidance Enhanced Green Terrain, LLC v. Bank of Am. Merrill Lynch*, 45 N.Y.S. 3d 392, 395 (1st Dep't 2017); *see also Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 922–23 (2d Cir. 1977) (refusing to disturb jury's verdict that defendant did not use reasonable efforts to promote plaintiff even where defendant was obviously committed to plaintiff and had exerted some efforts).  At the motion to dismiss stage, a court must resolve contractual ambiguities in favor of the plaintiff.  *See Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 471 (S.D.N.Y. 2021) (at the motion to dismiss stage a court must resolve contractual ambiguities in favor of plaintiff); *Mancuso v. L'Oreal USA Inc.*, 2021 WL 1240328, at *3 (S.D.N.Y. 2021).  Where language is ambiguous and there exists an interpretation that would favor the non-moving party, it is improper to grant a motion to dismiss.  *See Orchard Hill Master Fund Ltd. v. SBA Comm'ncs Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (a court may only grant a motion to dismiss a breach of contract claim where the language is unambiguous); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 2023 WL 8936386, at *5 (S.D.N.Y. 2023) (same).

Courts have found that a defendant may be in breach of a promotion clause where his efforts were severely inadequate or where he failed to take greater promotional efforts for reasons other than a good faith business judgment.  *See*, *e.g.*, *Zilg v. Prentice-Hall, Inc.*, 717 F.

2d 671 (2d Cir. 1983).  A defendant obligated to promote a plaintiff might also breach that duty where, in his dealings with others, he acts in a way that is especially harmful to the plaintiff and where he must have known it was harmful.  *See Van Valkenburgh v. Hayden Pub. Co.*, 30 N.Y. 2d 34, 46 (1972) (breach of promotional clause possible where publisher, without knowledge of author, hired other authors to prepare very similar books).  On the other hand, a defendant's uncouth or immoral behavior outside the workplace that has a mere incidental effect on the artist's career is not a breach of a best efforts promotional clause.  *Cf. id.* at 334 (publisher required to promote author still retains right to act in its own interests in a way that may incidentally lessen that author's royalties).  To hold otherwise would be to read a general morals clause into every management or promotional agreement, in violation of the canon that a court should be reluctant to read a clause into a contract that the parties have neglected to specifically include.  *See Vt. Teddy Bear Co. Inc., v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 767–768 (2004).

Plaintiff has made plausible allegations that DME Management did not engage in reasonable efforts to promote and enhance her career.  Plaintiff's allegations go beyond the statement that DME Management and Ehrlich engaged in immoral, distasteful, or questionable behavior outside the work context.  Plaintiff alleges that Ehrlich isolated her from individuals who were critical to her career, such as her bandmates, business manager and record label.  Dkt. No. 46-1 ¶¶ 63–65.  And Plaintiff alleges that Ehrlich's behavior while accompanying her on her Tour jeopardized that very same Tour and created issues with her record label, UMG, which had to conduct an internal investigation and ultimately force Ehrlich to leave the Tour and inform him he was prevented from ever being alone in a room with any woman from UMG in the future. *Id.* ¶¶ 77–79, 87.  These actions, if proven, are not simply moral failings of Ehrlich but plausibly

impacted DME Management's ability to reasonably promote and enhance Spencer-Smith's career.

### 2. Available Clause

Plaintiff also claims that DME Management breached paragraph 1 of the Management Agreement by not being reasonably available to her (the "Available Clause"). Defendants argue that even assuming the truth of Plaintiff's allegations, Plaintiff does not allege that Ehrlich was not available to confer with Spencer-Smith nor that her interests were not adequately represented, despite Ehrlich not being physically present at the Tour. Dkt. No. 50 at 12–13.

Viewing the allegations in the light most favorable to Plaintiff, she has not sufficiently alleged a breach of this provision under its plain language.

Under New York law, courts interpret contract provisions in accordance with their plain and ordinary meaning. *See Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020); *Ellington v. EMI Music, Inc.*, 24 N.Y. 3d 239, 244 (2014). The court must "examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Holland Loader*, 313 F. Supp. 3d at 469 (quoting *MBIA Ins. Corp. v. Patriarch Partners VII, LLC*, 842 F. Supp. 2d 682, 704 (S.D.N.Y. 2012), *aff'd*, 769 F. App'x 40 (2d Cir. 2019)). It also is a "well settled principle that a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties." *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 390 (S.D.N.Y. 2023) (citing *Cole v. Macklower*, 953 N.Y.S. 2d 21, 23 (1st Dep't 2012)).

The relevant language of paragraph 1 requires DME Management to make itself "available at reasonable times and reasonable places to confer with and give [Spencer-Smith]

guidance in connection with [her] Entertainment Services including but not limited to, recording music, music publishing, marketing, promotion, merchandising, publicity, imaging, live performances, choice of booking agents, and general matters concerning [Spencer-Smith's] professional career, business interests, employment and publicity" ("Available Clause").  Dkt. No. 46-1 Ex. B ¶ 1.  Paragraph 1 does not itself impose any obligations on Ehrlich personally.  It refers to the Manager, which is defined as "Song Collect, Inc. d/b/a DME Management."  *Id.* Ex. B at 1.  Paragraph 1(g) of the Management Agreement refers to Ehrlich personally.  *Id.* Ex. B ¶ 1(g).  It states that Ehrlich "shall be principally responsible for the management services set forth herein provided that [DME Management] may appoint other persons to render services hereunder as long as Ehrlich at all times retains such principal responsibility."  *Id.*  It goes on to say that in the event that Ehrlich dies or is disabled for a period of more than six months or for a period of more than six months is "no longer available to be the principal person rendering management services to Artist, and [DME Management] has not found a substitute approved by [Spencer-Smith] in writing," then Spencer-Smith would have the right to terminate the Management Agreement.  *Id.*

The facts pleaded by Spencer-Smith do not make out a violation of the Available Clause of paragraph 1.  Plaintiff alleges that DME Management was not reasonably available to her because "Ehrlich left the Tour abruptly prior to its conclusion, flew out his assistant to London in his stead, essentially abandoning Ms. Spencer-Smith in a foreign country without adequate representation of her interests."  *Id.* ¶¶ 82–83.  But paragraph 1 of the Management Agreement does not require Ehrlich to chaperone Plaintiff at all times.  Nor does it prescribe in detail the manner in which DME Management is to make itself available.  Indeed, the language specifically connotes that neither Ehrlich nor DME Management will make themselves

physically available to Plaintiff at all times.  DME Management is required only to make itself

available "at reasonable times" and at "reasonable places."  *Id*. Ex. B.  ¶ 1.  The Management

Agreement in fact specifies that "neither Manager, nor any of its employees shall be required to

travel to or meet with you."  *Id.* Ex. B ¶ 1(c).  And it requires Ehrlich to assume principal

responsibility for the management services but expressly contemplates that DME Management

"may appoint other persons to render services."  *Id.* Ex. B ¶ 1(g).  The obligation on DME

Management to make itself available is defined by the purposes for which DME Management is

to make itself available: "to confer" with Plaintiff and to give her "guidance" in connection with

her Entertainment Services.  Plaintiff makes no allegations that Ehrlich was not "reasonably"

available—for example, that he refused phone calls or failed to represent her interests in some

particularized way.  Tellingly, Plaintiff does not allege that Plaintiff failed to confer with her or

to give her guidance.  Accordingly, Plaintiff has not stated a claim for breach of contract based

on the Available Clause.  *See JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 3d

474, 482 (S.D.N.Y. 2022) (courts may dismiss breach of contract claims if the contract is

unambiguous and its plain language fails to support plaintiff's allegations of breach, citing

*Orchard Hill*, 830 F.3d at 156–57).

### 3.    Representations and Warranties

Plaintiff further claims that DME Management materially breached its obligation under

paragraph 7 of the Management Agreement, under which DME Management represented and

warranted that no act or omission by DME Management would "violate the rights of any person,

firm or corporation or other entity nor will subject [Spencer-Smith] to any liability or claims."

Dkt. 46-1 Ex. B ¶ 7.  Plaintiff alleges that, in violation of ¶ 7 of the Management Agreement,

Ehrlich violated the rights of certain persons including, but not limited to, various UMG

employees, and subjected Spencer-Smith to potential liability or claims.  *Id.* ¶ 95.

Defendants argue that these allegations are vague and conclusory and do not identify any specific person or specific rights that were violated or any specific claims to which Spencer-Smith is or may become subject.  Dkt. No. 50 at 14.  Defendants argue that these allegations are insufficiently pleaded as a matter of law.  *Id.*

Once again, the Court applies familiar principles of contract interpretation.  It construes the Management Agreement as a whole, striving to give meaning to each term and to reconcile and harmonize all of the provisions and terms.  *See BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 669 F. Supp.3d 204, 223 (S.D.N.Y. 2023).  The Court interprets the agreement to avoid "an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties."  *Cambridge Cap.*, 675 F. Supp. 3d at 390.

The clause upon which Plaintiff relies is stated to be a representation and warranty. Representations, warranties, and contractual covenants are distinct concepts.  A representation customarily is "a presentation of fact—either by words or by conduct—made to induce someone to act, esp. to enter into a contract."  *See Representation*, Black's Law Dictionary (11th ed. 2019); 13 Williston on Contracts § 38:20 (4th ed. 2024) ("A representation is a statement that induces the formation of the contract as distinguished from an affirmation of fact or a promise that is incorporated in and material to the contract.").  The falsity of a representation in a contract may give rise to a claim for rescission or for fraud or for other remedies specifically identified in the agreement.  *See* 27 Williston on Contracts § 69:47–49 (4th ed. 2024) (discussing recission and other remedies for false or fraudulent misrepresentations in contracts); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D. 3d 287, 294 (1st Dep't 2011) (plaintiff sufficiently pled claim for fraud based on misrepresentations in contract).  A warranty may have many different meanings depending on the context.  When used in connection with a contract or as part of a

representation and warranty clause, it may be "an assurance by one party to a contract of the existence of a fact upon which the other party may rely amounting to a promise to indemnify the promisee for any loss if the fact warranted proves untrue," *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (L. Hand, J.), or "an express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties; esp., a seller's promise that the thing being sold is as represented or promised," *Warranty*, Black's Law Dictionary (11th ed. 2019).  It is typically a way of guaranteeing that something is or will be true.  *See, e.g.*, *Mittasch v. Seal Lock Burial Vault, Inc.*, 344 N.Y.S.2d 101, 102–103 (2d Dep't 1973) (warranty that burial vault would give satisfactory service at all times explicitly extended to future performance).  Breach of a warranty can give rise to claims for damages or rescission.  *See, e.g.*, *Computerized Radiological Servs. v. Syntex Corp.*, 786 F. 2d 72, 76 (2d Cir. 1986) (remanding for recalculation of damages for breach of warranty); *Maciel v. BMW of N. Am., LLC*, 2021 WL 983013, at *8 (E.D.N.Y. Feb. 22, 2021) (discussing damages available for breach of warranty); *K.M.L. Laboratories Ltd. v. Hopper*, 830 F. Supp. 159, 163 (E.D.N.Y. 1993) (granting rescission based on misrepresentations and breached warranty).  A contractual covenant by contrast, is "a formal agreement or promise, usu. in a contract or deed, to do or not do a particular act; a compact or stipulation." *Covenant*, Black's Law Dictionary (11th ed. 2019).  Violation of a covenant can give rise to a claim for damages and, if material, may relieve the non-breaching party of the duty to perform.  *See JP Pizza Eastport LLC v. Luigi's Main Street Pizza Inc.*, 166 N.Y.S. 3d 485, 489–90 (Sup. Ct. 2022) (party is relieved of duty to perform under contract when other party commits material breach); *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 291–92, 295 (S.D.N.Y. 2005) (genuine issue of fact regarding whether

party violated covenant and whether that breach was material so as to excuse non-performance by other party).

In this case, interpreting the Management Agreement as a whole and striving to harmonize all of its terms, *see BOCA Aviation*, 669 F. Supp.3d at 223, the "representations and warranties" in paragraph 7 of the Management Agreement are best understood to set forth the basis for a claim of indemnification under paragraph 8.  The representations and warranties are, with one exception, reciprocal.  Each of Spencer-Smith and DME Management warrant and represent that they are under no legal disability and have the right to enter into the Agreement and to perform its terms and that "[n]o act or omission . . . will violate the rights of any person, firm or corporation or other entity nor will subject Artist to any liability or claims."  Dkt. No. 46-1 Ex. B ¶ 7.[5]  Paragraph 7 is immediately followed by paragraph 8, which specifically sets forth the consequences of a breach of the representations and warranties.  Paragraph 8 states:

> Manager hereby indemnifies Artist and holds Artist harmless against any damages, liability, costs, expense and fees (including reasonable attorney's fees and court costs) incurred as a result of or in connection with any claim or proceeding against Artist arising out of *any breach or claimed breach of any warranty, representation* or covenant by Manager or any act or omission by Manager provided the claim concerned has been reduced to a final adverse judgment by a court of competent jurisdiction or has been settled with Manager's prior written consent not to be unreasonably withheld.

*Id.* Ex. B ¶ 8 (emphasis added).  Spencer-Smith promises the identical indemnification to DME Management.  *Id.*

The purpose of these two provisions read together is to protect each of Spencer-Smith and DME Management against third-party claims asserted against either of them as a result of

---

[5] In addition, Spencer-Smith represents and warrants that in executing the Management Agreement, she has "relied solely on [her] judgment and, the advice of [her] attorney" and has "not been influenced to any extent whatsoever in entering this Agreement by any representations or statements made by Manager or any representative of Manager is such representations or statements do not appear in this Agreement."  *Id.* ¶ 7(c).

breaches of the representations or warranties by the other.[6]  Spencer-Smith indemnifies DME for damages arising out of a breach or claimed breach of the representations and warranties by Spencer-Smith and DME indemnifies Spencer-Smith for damages arising out of a breach or claimed breach of the representations and warranties by DME.  That the "representations and warranties" are related to the immediately following indemnity paragraph makes sense not only because the indemnity paragraph itself refers to the representations and warranties and sets out the consequence for their breach but also because a warranty is essentially a promise to indemnify.  *See* 1 Corbin on Contracts 1:14 (2024) (citing *Metro. Coal*, 155 F.2d at 784).

Plaintiff's reading of the Management Agreement would lead to absurd results.  *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, ---F. Supp. 3d ---, 2023 WL 8878935, at *8 (S.D.N.Y. Dec. 22, 2023); *Cambridge Cap.*, 675 F. Supp. 3d at 390.  Under Plaintiff's reading DME Management would be liable to Plaintiff for any and all possible violations by DME Management of any third party's rights anywhere in the world at any time.  And Plaintiff would be liable to DME Management for any violations by Plaintiff of any third party's rights anywhere in the world at any time.  But paragraph 7 is not a morals clause where parties might covenant not to "commit any act or do anything which might tend to bring Artist into public disrepute, contempt, scandal, or ridicule, or which might tend to reflect unfavorably on" the

---

[6] The indemnity provisions only sensibly apply to claims by third parties.  Dkt. No. 46-1 ¶ 8.  If the indemnity was meant to cover claims by one party against the other, there would be no reason for the indemnity provisions to include that the other party's consent is needed to settle. *See, e.g.*, *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2d Cir. 2003) ("[C]onstruing indemnification clause as applying only to third-party suits affords fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." (citing *Hooper Assoc., Ltd. v. AGS Computer, Inc.*, 74 N.Y. 2d 487, 493 (1989))); *see also Luna v. Am. Airlines*, 769 F. Supp. 2d 231, 243–44 (S.D.N.Y. 2011) (explaining that under New York law indemnification provisions do not apply to suits between the indemnitor and indemnitee unless the contract is unmistakably clear that such a result is intended).

counterparty, *see, e.g.*, *Nader v. ABC Television, Inc.*, 330 F. Supp. 2d 345, 346 (S.D.N.Y. 2004); *see also Loyal Bank Ltd v. Mastercard Intl Inc.*, 2021 WL 3604891 (S.D.N.Y. Aug. 13, 2021), and it cannot be read as one.  Its limited but important role is to protect Spencer-Smith against claims brought against her that arise from violations by DME Management of another's rights and to protect DME Management against claims brought against it that arise from Spencer-Smith's violations of another's rights.  *Cf. Erickson Air-Crane Inc. v. EAC Holdings, L.L.C.*, 2009 WL 10482106, at *4 (N.Y. Sup. Ct. Dec. 22, 2009) (discussing claim for contractual indemnification based on breach of representations and warranties that caused plaintiff to be liable for third party claims); *Trane Techs. v. Hussman Corp.*, 2022 WL 787925, at *4 (contractual indemnification provision provided for indemnity against tort suits from third parties); *291 Broadway Realty Assocs. v. Weather Wise Conditioning Corp.*, 2012 WL 3055509, at *6 (N.Y. Sup. Ct. 2012) (discussing indemnification provision in contract for breach of representation and warranty); *Meeropol v. Nizer*, 505 F. 2d 232, 236 (2d Cir. 1974) (hardcover publisher agreed to indemnify paperback publisher for any breach of hardcover publisher's warranties that publishing of book would not violate third party's rights).

Plaintiff does not allege that she faces claims by any person based on Ehrlich's violation of anyone's rights and she does not seek indemnification.  Thus, she has not stated a claim for relief based on a violation of the representations and warranties.

## II.    Plaintiff's Motion to Add a New Fourth Claim for Relief

Plaintiff seeks leave to add a new Fourth Claim for breach of the covenant of good faith and fair dealing in the Management Agreement against DME Management.  Plaintiff alleges that implicit in the Management Agreement was an obligation on the part of DME Management to professionally represent Plaintiff's interests and protect her reputation in the music and entertainment industry and that DME Management breached that covenant by engaging, through

Ehrlich, in conduct which was detrimental to her career in the entertainment industry.  Dkt. No. 46-1 ¶¶ 122-23.

Defendants argue that the claim for breach of the implied covenant is impermissibly duplicative of the claim for breach of the Management Agreement.  That argument is without merit.  Defendants are correct that in general, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life Ins.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010) (same), *aff'd*, 453 F. App'x 108 (2d Cir. 2012) (summary order); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of . . . an express provision of the underlying contract.") (internal quotation marks and citation omitted).  However, a plaintiff can plead a claim for breach of the covenant of good faith and fair dealing where "there is a dispute over the existence, scope, or enforceability of the putative contract."  *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999), *cited in Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018); *see also Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011).  Here, there is no dispute over the existence or enforceability of the Management Agreement.  But there is a dispute over its scope or its meaning.  The new Fourth Claim for Relief is not impermissibly duplicative.

Second, Defendants reprise the same argument they make in response to Plaintiff's allegations of breach of the express Promotion Clause—that a claim for a violation of the covenant of good faith and fair dealing seeks to improperly import a non-existent morals clause

into the contract for which the parties did not bargain.  Dkt. No. 50 at 19-20.  Defendants' second argument has merit.

The obligation of good faith and fair dealing is implicit in every contract and "embraces the pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 506 (S.D.N.Y. 2021) (citing *Dalton v. Educ. Testing Serv.*, 639 N.Y.S. 2d 977, 979 (1995).  The implied covenant, however, "can only impose obligations consistent with other mutually agreed upon terms in a contract.  It does not add to the contract a substantive provision not included by the parties."  *See Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co., Inc.*, 209 F. Supp. 3d 547, 554 (E.D.N.Y. 2016) (internal citations omitted).  The duty of good faith and fair dealing does not import generalized "considerations of morality and public policy" in the abstract, but only as a means to honor "the reasonable expectations created by the autonomous expressions of the contracting parties."  *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984) (Scalia, J.).

> When the implication of a duty of good faith and fair dealing would be inconsistent with the language of a provision of a contract and is not necessary to make the agreement meaningful, the court will not invoke the covenant.  But where, by contrast, it is necessary to read an obligation of good faith in order to avoid rendering a contract promise illusory—in the words of the cases, where necessary so as not to deprive a contracting party of the "fruits of the contract"—the court will not hesitate to infer an obligation to act in good faith.

*S. Telecom Inc.*, 520 F. Supp. 3d at 507.

Plaintiff has not stated a claim for violation of the implied covenant of good faith and fair dealing.  Plaintiff alleges that Ehrlich's behavior here "frustrated the essential purpose of the Management Agreement."  Dkt. 46-1 ¶ 96.  She relies on the identical conduct that she claims constitutes a breach of the Promotion Clause.  The Court has found that Plaintiff has stated a

plausible claim for breach of that provision.  But, if as the facts develop, Plaintiff's claim does not violate the Promotion Clause, it would not violate the duty of good faith and fair dealing.

Plaintiff's claim rests upon the implicit premise that a manager who engages in the conduct alleged in the complaint cannot also perform the management functions for which Plaintiff contracted.  The claim would be that such conduct would render the promise to provide management services illusory.  But the premise is not supported by fact and is false.  The allegations may support that Ehrlich was a poor manager.  They may also support that he did not provide sufficient promotional support.  But there is nothing in the allegations that would suggest that a person who engaged in the conduct Ehrlich is alleged to have engaged in—taking pictures of women without their consent, soliciting a female UMG employee to work for him in New York, commenting inappropriately about multiple women, berating a UMG employee, causing UMG to conduct an internal investigation into his behavior and require him to leave the Tour and not interact alone with any female UMG employees, and isolating Spencer-Smith from her band, writers, producers and record label—would also necessarily be unable to discharge his contracted-for duties.  In the absence of such allegation of fact, Plaintiff has not put forward enough to show a breach of the implied duty of good faith and fair dealing.

## III.   Plaintiff's Motion to Add a New Fifth Claim for Relief

Plaintiff's proposed new Fifth Claim alleges that the DME Firms materially breached their obligations under the Engagement Agreement.  Dkt. No. 46-1 ¶¶ 56–57, 127.  Plaintiff alleges that, in violation of its contractual obligation to provide legal services to her, "[o]n or about January 26, 2022, Defendants engaged the firm of Mark Music & Media Law, P.C. [('MMML')], to render legal services on behalf of Spencer-Smith in connection with her career in the entertainment industry, i.e., to perform the very legal services that Ehrlich and the DME Firms were contractually bound to provide to Spencer-Smith directly pursuant to the

Engagement Agreement." *Id.*  Plaintiff claims that by delegating the day-to-day legal services for her to MMML, the DME Firms breached their obligation to render all legal services that may be necessary or desirable to Spencer-Smith.  *Id.*

Defendants assert that the new Fifth Claim would be futile because: "(1) the SAC does not allege an actual breach of that agreement; (2) Spencer-Smith waived the alleged breach of that agreement, and (3) the SAC fails to identify any damages stemming from the alleged breach of that agreement."  Dkt. No. 50 at 15.

Defendants first argue that Plaintiff has not pleaded a claim for breach of the Engagement Letter because the letter did not obligate DME P.C. to personally perform legal services for her but only required them to be "responsible" for the provision of legal services  Dkt. No. 50 at 15. On Defendants' reading, DME P.C. could be merely a manager of Plaintiff's legal needs, arranging for her to engage other law firms but not doing the work itself.  In effect, Defendant would have it that it was a guarantor that Plaintiff would be provided legal services.  It was not required to do anything itself but would be liable (i.e., "responsible"), if the legal services were not provided.

Defendants misread the Engagement Letter and the law.  The Engagement Letter did not simply require Defendant to identify law firms for Plaintiff.  DME P.C. agreed "to act on your behalf as attorneys."  Dkt. No. 46-1 Ex. A at 1.  The Scope of the Engagement confirmed that Plaintiff was "engaging [DME P.C.] as [her] legal representative to render legal services generally in connection with [her] career" in the entertainment industry."  *Id.* ¶ 1.  DME P.C. agreed to provide "legal services" to Plaintiff in exchange for compensation to be paid to the firm for its "services," in the form of a fee arrangement that was in lieu of the firm's hourly time charges.  *Id.* ¶¶ 1–3.  If the point were not clear enough, the Engagement Letter specifies those

legal services that the firm "does not customarily provide," and reflects that as to those services, and at Plaintiff's request, Defendants "will either discuss a further arrangement for such services or recommend other counsel to advise you with respect to such matters." *Id.* ¶ 1. The plain implication is that DME P.C. itself will perform the services that it customarily provides and that, even as to the other services, it will not recommend or retain other counsel to represent Plaintiff without Plaintiff asking Defendants to do so.

The Engagement Letter thus is of the nature of a personal services agreement, pursuant to which the obligor agrees to perform services that are non-delegable in the absence of the obligee's agreement. *See* Restatement (Second) of Contracts § 318 (1981) (a contractual obligation may require performance by a specific person if "the obligee has a substantial interest in having that person perform or control the acts promised"). Ehrlich and his firms agreed to provide the specified legal services to Spencer-Smith; they could not delegate those services without her consent.

Indeed, the particular nature of the services Ehrlich and his firm agreed to provide were of the sort that could not be delegated to another firm absent Spencer-Smith's consent. When a client retains a lawyer with an affiliation with a law firm, the lawyer's firm assumes the authority and responsibility of representing that client, unless the circumstances indicate otherwise. *See* Restatement (Third) of the Law Governing Lawyers § 14 (2000). And "a client's retention of a lawyer or firm ordinarily does not permit the lawyer or firm, without further authorization from the client, to retain a lawyer outside the firm at the client's expense to represent the client." *Id.* Courts in this District have recognized as much. *See Pope v. Rice*, 2005 WL 613085, at *9 (S.D.N.Y. 2005) ("An attorney is generally authorized to delegate a client's business only to the attorney's employees, and even then, such a delegation is inappropriate when the attorney would

have reason to know that his client was unaware of how the attorney's business was organized. Because the relationship between an attorney and client is personal, without 'specific' authorization from the client, an attorney cannot delegate the trust and create an agency relationship between the client and other counsel." (internal citations omitted)).

The language upon which Defendants hang their hat—that DME "will be responsible for rendering all legal services that may be necessary or desirable that are related to your services and activities throughout the entertainment industry"—thus cannot bear the weight that Defendants place upon it.  In context, that language does not relieve Defendants of the responsibility to personally perform legal services for Plaintiff.  The Engagement Letter provides that DME P.C. will be responsible for the rendering of legal services for Plaintiff by itself rendering those legal services.  Defendants' first argument fails.

Next, Defendants argue that, even if the hiring of MMML constituted a breach of the Engagement Agreement, Spencer-Smith waived that breach.  Dkt. No. 50 at 16–17.  Defendants' waiver argument turns upon the existence and cognizability on a motion directed to the pleadings of an agreement dated January 26, 2022 and titled "Notice of External Counsel Engagement" (the "Mark Agreement"), in which Ehrlich apparently advised Spencer-Smith that DME P.C. "intends to engage the firm [MMML] to jointly act with us on your behalf in the negotiation of your recording contact and other entertainment industry related agreements."  Dkt. No. 49-1. The Mark Agreement, which is apparently signed by Spencer-Smith, states: "Compensation for [M]MML's services will be paid out of the the [sic] five (5%) percent commission you previously agreed to pay us," and asks that if Spencer-Smith is "comfortable with this arrangement," she countersign the Mark Agreement and return it to Ehrlich.  *Id.*  Defendants argue that the Mark Agreement is integral to the SAC.  Dkt. No. 50 at 17 n. 13.

The flaw in Defendants' argument, as Plaintiff points out, Dkt. 51 at 3, is that the Mark Agreement cannot be considered at the motion to dismiss stage, which is the same standard used to assess the futility of a proposed amendment to a complaint.  *Panther Partners*, 681 F.3d at 119; s*ee also E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 307 F.Supp.3d 52, 57 (E.D.N.Y. 2018).

On a motion to dismiss, "the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020) (quoting *In re Bank of AM. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd* 847 F. App'x 35 (2d Cir. 2021)).  Otherwise, a court may rely on materials outside the pleadings in disposing of a motion originally addressed to the pleadings but, if so, the court must treat the motion as one for summary judgment, with all of the procedural protections that Rule 56 provides.  *See* Fed. R. Civ. P. 12(d); *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

The Mark Agreement is not referenced in the SAC and it is not the type of document of which the Court can take judicial notice.  *See e.g.*, *Bristol v. Nassau County*, 685 Fed. App'x 26, 28 (2d Cir. 2017) (summary order) (on motion to dismiss district court did not abuse its discretion in judicially noticing self-authenticating, publicly available records of decisions in related proceedings but refusing to judicially notice documents where the facts therein were not free from reasonable dispute or capable of ready determination from sources not reasonably questioned); *Finn v. Barney*, 471 Fed. App'x 30, 32 (2d Cir. 2012) (summary order) (courts "may take judicial notice of documents where the documents 'can be accurately and readily

determined from sources whose accuracy cannot be reasonably questioned'" including

documents that are publicly available but only for the fact that they are publicly available not for

their truth (quoting Fed. R. Evid. 201(b)(2))); *McKenzie-Morris v. V.P. Records Retail Outlet,*

*Inc.*, 638 F. Supp. 3d 333, 338–339 (S.D.N.Y. 2022) (explaining that a court may judicially

notice documents such as those filed in other court proceedings on a motion to dismiss but not

for the truth of the matters asserted within them).  It thus is cognizable only if it is integral to the

complaint.  But for a document to be integral to a complaint, the complaint must "rel[y] heavily

upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 383 F.3d 147, 153 (2d Cir. 2002).

The complaint must rely on the document itself for the claims in the suit.  For example, courts

consider documents integral to the complaint when a claim is "directly premised" on the

agreement and it is quoted from at length.  *See Johnson v. Levy*, 812 F. Supp. 2d 167, 177–178

(E.D.N.Y. Sept. 19, 2011); *see also Int'l Audiotext Network Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d

69, 72 (2d Cir. 1995) (per curiam) (where plaintiff alleged that particular agreement between

defendant and third party violated federal antitrust law, that agreement was integral to

complaint); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d

Cir. 1991) (prospectus was integral to complaint where plaintiff alleged misrepresentations in

that prospectus); *Ocampo v. 455 Hospitality LLC*, 2016 WL 4926204, at *4 (S.D.N.Y. Sept. 15,

2016) (franchise agreement was integral to the complaint where plaintiffs referenced it numerous

times, relied significantly on terms and concepts drawn from the agreement and their claims

against certain defendants turned on the franchise relationship).

     Here, the most that can be said is that Plaintiff relied on certain information contained in

the Mark Agreement in framing her complaint.  Her allegations include both the fact that the

DME Firms delegated responsibilities to MMML and that MMML charged rates different from

those charged by the DME Firms, both of which are facts included in the Mark Agreement. But it is not sufficient that a plaintiff have notice or possession of a document for the document to be considered on a motion directed to the pleadings. *See Glob. Network Comm'cns*, 458 F.3d at 156. Diligent counsel, in conducting the reasonable inquiry required by Rule 11, may review and draw from a plethora of documents before filing a complaint. *See* Fed. R. Civ. Proc. 11. But that does not make each and every one of those documents fodder for a Rule 12(b)(6) motion to dismiss. There would be little left of Rule 12(d) and Rule 56 if that were so. *See United States ex. rel. Foreman v. AECOM*, 19 F. 4th 85, 107 (2d Cir. 2021) ("If all that is required to render a document integral to the complaint is that it be favorable to the defendant, possibly thwarting the plaintiff's claims, it would be difficult to imagine a document that could not be considered on a motion to dismiss pursuant to the integral-to-the-complaint exception."). In most cases where a document is integral, it is because it is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel v. Bunge, Ltd.*, 820 F. 3d 554, 559 (2d Cir. 2016).

The Mark Agreement may ultimately be fatal to Plaintiff's claim but it is not fatal at this stage. Plaintiff does not rely on the Mark Agreement *per se* or on any of its terms in the SAC. The Mark Agreement does not form any part of the basis of her claims. Her complaint for breach of the Engagement Agreement is not premised on the Mark Agreement or its terms. That Plaintiff allegedly signed the Mark Agreement was entirely incidental to the information from which the complaint was drawn, and not necessary to avoid making that information misleading. Plaintiff does not mention the Mark Agreement in the SAC nor does she plead anything about its terms or effect and instead focuses solely on the terms of the Engagement Agreement. It thus is

not integral to the complaint or incorporated by reference and cannot be reviewed as part of the motion to dismiss. *See, e.g.*, *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *16 n. 6 (S.D.N.Y. Nov. 17, 2022) (in breach of contract case that involved alleged breach of an anti-assignment provision, the asset purchase agreement between assignor and assignee was not integral to the complaint because the complaint only briefly mentioned the asset purchase agreement, did not specifically reference its terms and extensive references to a separate assignment agreement were insufficient); *Moore v. Hadestown Broadway LLC*, --- F. Supp. 3d ----, 2024 WL 989843, at *7 (S.D.N.Y. 2024) (employment contracts, email, and collective bargaining agreement not integral to the complaint but email that plaintiff quoted from in her complaint and that she alleged she was fired in retaliation for complaining about was integral).

Finally, Defendants argue that the Fourth Claim cannot state a claim for relief because Plaintiff does not sufficiently allege that she suffered any damages from MMML performing the services the DME Firms were obliged to perform. Dkt. No. 50 at 18–19. Plaintiff alleges that she was damaged by the purported breach of the Engagement Agreement, including by paying the DME Firms for legal services which they did not perform. Dkt. No. 46-1 ¶¶ 56–58, 106, 128.

Plaintiff sufficiently alleges damages. She alleges that she paid the DME Firms for legal services that they did not perform. Plaintiff has alleged "particular facts as to how she was damaged." *See Am. Bio Medica v. Bailey*, 341 F. Supp. 3d 142, 156 (N.D.N.Y. 2018). In any event, New York courts have held that "[n]ominal damages are always available in breach of contract actions." *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993); *see Cambridge Cap.*, 675 F. Supp. 3d at 441 n.22 ("Under New York law, a party suing for breach of contract

can obtain nominal damages where it has not suffered actual damages."); *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024 WL 1724592, at *21 (S.D.N.Y. Apr. 19, 2024).

Accordingly, Plaintiff may amend her complaint to include the new Fifth Claim alleging a breach by the DME Firms of the Engagement Agreement.

## IV.    Plaintiff's Motion to Add a New Sixth Claim for Relief

Plaintiff's proposed new Sixth Claim would ask the Court for a declaratory judgment that the Management Agreement was properly terminated on or about May 13, 2022.  Dkt. No. 46-1 ¶ 130.  Defendants argue again that the new Sixth Claim would be futile because Plaintiff did not comply with the Cure Provision.  The Court will not allow the Sixth Claim to go forward but for a reason different from that offered by Defendants.

A court considering whether to permit a declaratory judgment must consider first whether there is 1) a substantial controversy, 2) between parties having adverse legal interests, and 3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment and then, assuming that there is jurisdiction, 1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and 2) whether a judgment would finalize the controversy or offer relief from uncertainty.  *See Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, 2010 WL 5067962, at *5 (E.D.N.Y. Dec. 7, 2010) (citing *Duane Reade, Inc. v. St. Paul Fire & Marines Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)); *Allied World Surplus Lines Ins.Co. v. Elamex USA, Corp.*, 2024 WL 2212948, at *5–7 (S.D.N.Y. May 16, 2024).  A declaratory judgment will serve no useful purpose if it will be resolved by another claim in the litigation. *See Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *3 (S.D.N.Y. 2021) (collecting cases); *Weihai Textile Grp. Import & Export Co., Ltd. v. Level 8 Apparel, LLC*, 2014 WL 1494327, at *14 (S.D.N.Y. Mar. 28, 2014) (request for declaratory relief duplicative insofar as it seeks clarification of the same rights and obligations that will be addressed in breach of contract

claim); *cf. Jem Caterers of Woodbury, Ltd. v. Woodbury Jewish Center*, 2012 WL 1557281, at

*3 (N.Y. Sup. Ct. Apr. 26, 2012) (declaratory relief regarding contract termination unnecessary

where it would be resolved by breach of contract claim).  Courts may also consider:

> 1) whether the proposed remedy is being used merely for procedural fencing or a
> race to res judicata, (2) whether the use of a declaratory judgment would increase
> friction between sovereign legal systems or improperly encroach on the domain of
> a state or foreign court, and (3) whether there is a better or more effective remedy.

*Jem Caterers of Woodbury*, 2012 WL 1557281, at *3 (citing *Dow Jones & Co. v. Harrods, Ltd.*,

237 F. Supp. 2d 394, 406–09 (S.D.N.Y. 2002)).

Here, Plaintiff seeks a declaratory judgment that the Management Agreement was

properly terminated and that she no longer has any binding obligations under that agreement.

Dkt. 46-1 ¶¶ 130–133.  However, such a declaratory judgment would serve no useful purpose in

the litigation because whether the Management Agreement was properly terminated and

therefore whether Plaintiff has any continuing obligations under the Management Agreement

will be resolved by other claims in this litigation.  Plaintiff has alleged that DME Management

materially breached its obligation to use reasonable efforts to promote and enhance her career.

*Id.* ¶ 94.  The Court has already determined that the facts alleged by Plaintiff state a plausible

claim for relief.  And under New York law, when one party commits a material breach, the other

party is relieved or excused from future performance obligations.  *See Wechsler v. Hunt Health

Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004).  A judgment in her favor will necessarily

carry with it the conclusion that Plaintiff was relieved from further performance as of the date of

Defendant's breach.  And, absent a material breach, there is no other provision under the

Management Agreement by which Plaintiff could have terminated it and Plaintiff makes no

allegations that she terminated the Management Agreement by any other means or is relieved

from further performance on any other basis.  Thus, the addition of a declaratory judgment claim

to this action will accomplish nothing that Plaintiff's breach of contract claim will not otherwise accomplish.

Moreover, Defendants have already alleged in this litigation that Spencer-Smith breached the Management Agreement and have asked for a declaratory judgment regarding Spencer-Smith's continuing obligations under the Management Agreement. Dkt. No. 16 at 23, 24–26. Plaintiff is not "left awaiting the initiation of legal proceedings while damages accrue" because the parties have already chosen to pursue their coercive remedies. *See Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006); *Amusement Industry, Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) (fact that lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that declaratory judgment will serve no useful purpose.). Thus, Plaintiff's obligations under the Management Agreement will necessarily be settled by claims already present in this litigation and therefore the declaratory judgment she seeks would serve no useful purpose.

Plaintiff's motion to amend the complaint to add a claim for declaratory relief is accordingly denied.

## CONCLUSION

The motion to amend is GRANTED IN PART and DENIED IN PART. Plaintiff may file a Second Amended Complaint in accordance with this opinion by July 10, 2024.

The Clerk of Court is respectfully directed to close Dkt. No. 44.

SO ORDERED.

Dated: July 3, 2024
     New York, New York

LEWIS J. LIMAN
United States District Judge

43